**IN THE MATTER OF THE ARBITRATION ACT 1996**

**AND**

**IN THE MATTER OF AN ARBITRATION**

BETWEEN:-

**POSH SAUDI CO. LTD.**
of Dammam, Saudi Arabia

<u>Claimants</u>
(Owners)

and

**DYNAMIC INDUSTRIES SAUDI ARABIA LTD.**
of Al Khobar, Saudi Arabia

<u>Respondents</u>
(Charterers)

**"POSH ENDEAVOUR"**

<u>Charterparty dated 1st October 2018</u>

---

**FINAL ARBITRATION AWARD**
**ASSESSING COSTS**

---

WHEREAS:

1. By a timecharterparty on an amended SUPPLYTIME 2005 form dated Saudi Arabia, 1st October 2018 ("the charterparty"), the Claimants ("the Owners") chartered the Offshore Supply Vessel "Posh Endeavour" ("the vessel") to the

**EXHIBIT "F"**

Respondents ("the Charterers") for a period of *"200 DAYS FIRM"*, with the Charterers having the option to extend the duration of the charterparty for *"2 x 7 DAYS, 14 x 1 DAY"* on terms and conditions more particularly set out in the charterparty. Pursuant to four subsequent Addenda (numbered 1, 2, 3 and 4), the duration of the charterparty was extended to 18th January 2020.

2. Clause 34 of the charterparty incorporated the BIMCO Dispute Resolution Clause and provided, where relevant, as follows:

> *"(a) This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out of in connection with this Charter Party shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provision of this Clause. The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced.*
>
> *The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as the sole arbitrator and shall advise the other party accordingly. The award of the sole arbitrator shall be binding on both parties as if he had been appointed by agreement.*
>
> *Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of sole arbitrator.*
>
> *In cases where neither the claim nor any counterclaim exceeds the sum of US$50,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time when the arbitration proceedings are commenced ..."*

3. Disputes, hereinafter more particularly defined, arose between the parties for the determination of which the Owners appointed me, Edward Mocatta of Suite 6, 6th Floor, Central House, 1 Ballards Lane, London, N3 1LQ and the Charterers appointed me, Patrick O'Donovan of Basement Suite, 131 High Street, Teddington, Middlesex, TW11 8HH. In due course, we the party-appointed arbitrators appointed the undersigned, Michael Baker-Harber of 87 High Street, Burnham-on-Crouch, Essex, CM0 8AH to be the Third

Arbitrator. We are all Members of the Baltic Exchange in the City of London and Full Members of the London Maritime Arbitrators Association ("the LMAA").

4. The seat of the arbitration is London, England.

5. The dispute referred to us was the Owners' claim for US$3,998,167.80 in respect of what they said was the total outstanding principal sum due under the charterparty. They also claimed interest and their costs.

6. The Charterers denied liability for the sum(s) claimed or any sum.

7. By our Final Arbitration Award dated 2nd September 2020, we awarded the Owners their claim in full in the sum of US$3,998,167.80 and (in paragraph C(i) of the Award) awarded and adjudged:

> *"(i)    that the Charterers shall bear their own costs and pay the Owners' costs of the reference (and the Owners' said costs may, if not agreed, be determined by us or in the High Court in London in the Owners' option on the basis set out in s.63(5) of the Arbitration Act), for which purpose **WE HEREBY RESERVE JURISDICTION** to make a subsequent Award of Costs"*

8. The Owners wrote a letter to the Charterers on 16th September 2020 requesting payment of the amounts awarded to Owners by the Tribunal. Paragraph 5 of Owners' letter also stated:

> *"Owners have calculated their costs of this reference as US$25,828 and GBP 525 as per the cost schedule set out at Annex 1 to this letter. Owners invite Charterers to confirm agreement to pay these costs, which are plainly both reasonable and proportionate in light of the amount in dispute."*

A schedule of the Owners' costs was enclosed as Annex 1 to the Owners' letter dated 16th September 2020. The Owners requested a response within 14 days (i.e. 30th September 2020). The Owners' letter also stated:

> *"Should Charterers not agree to pay Owners' costs as set out in paragraph 5, then Owners will proceed to apply to the Tribunal for an Award in respect of their costs of US $25,828 and GBP 525."*

9. The Charterers did not lodge any appeal to the Award prior to the deadlines under the Arbitration Act 1996, and as a result our Award dated 2nd September 2020 is final and binding.

10. The Owners subsequently sent a further letter to the Charterers on 8th October 2020, stating that they had not received any response to their letter of 16th September 2020 and no payment had been received from the Charterers. The letter stated that:

> *"Owners therefore put Charterers on notice that ... should Charterers fail to confirm their agreement to pay the sums of US$25,828 and GBP 525 to Owners within 7 days of the date of this letter, Owners will forthwith apply to the Tribunal for a subsequent Award of Costs"*

11. The Owners did not receive any response from the Charterers to their letters dated 16 September 2020 or 8th October 2020.

12. On 19th October 2020, by email from the Owners' solicitors in Singapore, Clyde & Co. Clasis Singapore Pte. Ltd. ("Clyde & Co.") the Owners applied to the Tribunal for an award in respect of their costs in the amount of US$25,828 and £525. Clyde & Co. confirmed that these costs did not exceed the costs which the Owners are liable to pay in respect of the arbitration.

13. The Owners also applied for the costs of this application. They estimated the current costs of the application as being a further US$1,000 (covering Clyde & Co.'s costs of preparing the application and liaising with the Owners regarding the same).

14. The Owners submitted that the claimed costs were clearly both reasonable and proportionate, as compared against the value of the dispute (over US$ 4 million, reflecting interest) and the Tribunal's expenses in the Award (£16,800). Moreover, they submitted, a significant proportion of the Owners' costs were due to the Charterers' actions in (a) refusing to pay a straightforward claim for unpaid invoices and (b) then seeking to delay determination of Owners' claim in the arbitration proceedings.

15. The Owners requested that the Tribunal should make a summary assessment of Owners' costs claim and award Owners their costs in full, given that (in the Owners' submission) those costs were both reasonable and proportionate.

16. By email on 19th October 2020 on behalf of the Tribunal, Patrick O'Donovan made the following order:

> *"On behalf of the Tribunal, I refer to Clyde's e-mail this morning and their application for an Award in respect of the costs of the arbitration, which they ask that we assess summarily in the sum of US$25,828 and GBP 525, (plus a further US$1,000 covering the costs of pursuing this application and liaising with their Clients on it).*
>
> *We **ORDER** that Dentons/the Respondents let us have their comments on the application within 14 days of today's date, that is by no later than 2nd November 2020."*

17. No response was received from Dentons (the Charterers' London Solicitors) or the Charterers to that order and, by email on 3rd November 2020, Clyde & Co. applied to us for a final and peremptory order pursuant to section 41(5) of the Arbitration Act 1996, which provides:

> *"41 ...*
> *(5) If without showing sufficient cause a party fails to comply with any order or directions of the tribunal, the tribunal may make a peremptory order to the same effect, prescribing such time for compliance with it as the tribunal considers appropriate."*

18. On 4th November 2020, Patrick O'Donovan on behalf of the Tribunal made the following final and peremptory order:

> *"I confirm that we have not received any request for an extension of time. Accordingly, we now (pursuant to section 41(5) of the Arbitration Act 1996) make this **FINAL AND PEREMPTORY ORDER** that your Clients' submissions in response to the Claimants' application for an award in respect of the costs of the arbitration be served within 7 days of today's date, that is by no later than 11th November 2020.*
>
> *In the event of non-compliance, we would then, pursuant to section 41(7)(c) of the 1996 Act, proceed to a costs award on the basis of the materials presently before us.*

Section 41(7)(c) of the Arbitration Act 1996 provides:

> *"41...*
> *(7) If a party fails to comply with any other kind of peremptory order* [i.e. other than a peremptory order for the provision of security for costs] *then, without prejudice to section 42 (enforcement by court of tribunal's peremptory orders), the tribunal may do any of the following -*
>
> *...*
>
> *(c) proceed to an award on the basis of such materials as have been properly provided to it;"*

19. By email on 11th November 2020, Dentons replied on behalf of the Charterers in the following terms:

    > *"We thank the Tribunal for its email below and have no further submissions.*
    >
    > *All our client's rights remain reserved."*

20. By email on 13th November 2020 sent on behalf of the Tribunal, Patrick O'Donovan advised as follows:

    > *"On behalf of the Tribunal, I refer to Denton's email of 11th November 2020 advising that the Respondents "have no further submissions".*
    >
    > *In the circumstances, the Respondents are in breach of the final and peremptory order that their submissions in response to the Claimants' application for an award in respect of the costs of the arbitration be served by no later than 11th November 2020. Accordingly, as envisaged in our final and peremptory order of 4th November 2020, we will now, pursuant to section 41(7)(c) of the Arbitration Act 1996, proceed to a costs award on the basis of the materials presently before us."*

    Accordingly, we proceeded to consider the matter on the basis of the materials presently before us.

21. We have determined that the Owners' costs are to be assessed on the basis set out in s.63(5) of the Arbitration Act 1996 which provides:

> (5) *Unless the tribunal or the court determines otherwise-*
>
> *"(a) the recoverable costs of the arbitration shall be determined on the basis that there shall be allowed a reasonable amount in respect of all costs reasonably incurred, and*
>
> *b) any doubt as to whether costs were reasonably incurred or were reasonable in amount shall be resolved in favour of the paying party."*

22. We attach as Annex 1 the Owners' schedule of their claimed costs.

23. We found the hourly rates claimed to be reasonable and in line with the rates charged by similar firms of solicitors in Singapore conducting maritime/ commercial work.

24. We find that the time claimed is reasonable and proportionate and we have allowed it in full.

25. The Owners are also entitled to the disbursements claimed of £525 and we have summarily assessed the Owners' costs of this reference as to costs in the claimed sum of US$1,000.

26. In summary, the Owners' claim for profit costs in the sum of US$25,828, disbursements of £525 and the costs of the present exercise in the sum of US$1,000 succeed in full.

**NOW WE** the said Arbitrators, Edward Mocatta, Patrick O'Donovan and Michael Baker-Harber, having accepted the burden of this reference and having carefully and conscientiously considered the submissions and documents placed before us and having given due weight thereto and finding ourselves in agreement, **DO**

**HEREBY MAKE, ISSUE AND PUBLISH** this our **FINAL ARBITRATION AWARD ASSESSING COSTS** as follows:

(A) **WE FIND AND HOLD** that the Owners' claims in the sum of US$26,828 and £525 succeed in full.

(B) **WE THEREFORE AWARD AND ADJUDGE** that the Charterers shall forthwith pay to the Owners the said sums of US$26,828 (Twenty-Six Thousand Eight Hundred and Twenty-Eight United States Dollars) **AND** £525 (Five Hundred and Twenty-Five Pounds Sterling) **PLUS** interest thereon at the rate of 4.5% (four and one-half per cent) per annum and pro rata compounded at three-monthly rests from 2nd September 2020 until the date of payment.

(C) **WE FURTHER AWARD AND ADJUDGE:**

 (i) that the Charterers shall bear their own costs and pay the Owners' costs of the matters determined herein (which we have assessed above in the sum of US$1,000);

 (ii) that the Charterers shall further bear and pay the costs of this our Final Arbitration Award Assessing Costs (inclusive of our fees and interlocutory charges in relation hereto) in the sum of £1,700, **PROVIDED ALWAYS** that if, in the first instance, the Owners shall have paid any amount in respect of the costs of this our Award they shall be entitled to immediate reimbursement by the Charterers of any sum or sums so paid; **AND**

 (iii) that the Charterers shall pay interest on any sums payable to the Owners under sub-paragraph C(ii) above at the rate of 4.5% (four and one-half per cent) per annum or pro rata compounded at three-monthly

rests from the date of this our Final Arbitration Award Assessing Costs until the date of payment or reimbursement as appropriate.

**GIVEN** under our hands at the seat of the arbitration in London, England this 9th day of December 2020

*[signature]*

Edward Mocatta

*[signature]*

Patrick O'Donovan

*[signature]*

Michael Baker-Harber

IN THE MATTER OF THE ARBITRATION ACT 1996
AND
IN THE MATTER OF AN ARBITRATION

BETWEEN:-

**POSH SAUDI CO. LTD.**
of Dammam, Saudi Arabia

Claimants
(Owners)

and

**DYNAMIC INDUSTRIES SAUDI ARABIA LTD.**
of Al Khobar, Saudi Arabia

Respondents
(Charterers)

"POSH ENDEAVOUR"

Charterparty dated 1st October 2018

---

FINAL ARBITRATION AWARD ASSESSING COSTS
AND REASONS

---

# ANNEX 1

**Annex 1: Owners' Statement of Costs**

**POSH SAUDI CO. LTD v DYNAMIC INDUSTRIES SAUDI ARABIA LTD**
**"POSH ENDEAVOUR" - CHARTERPARTY DATED 1 OCTOBER 2018**

| Casehandler | Hourly Rate (US$) | Time Attending Matter (Hours) | Total (US$) |
|---|---|---|---|
| Ik Wei Chong (Partner) | 570 | 5.5 | 3,135 |
| Paul Collier (Senior Associate) | 450 | 46.5 | 20,925 |
| Asyraf Isnin (Associate) | 340 | 5.2 | 1,768 |
| | | **TOTAL (US$):** | 25,828 |

Disbursements: appointment fee of Mr. Edward Mocatta (GBP 350) and 50% of appointment fee of Mr. Baker-Harber (GBP 175) totalling **GBP 525.**