UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **POSH SAUDI CO. LTD.,**<br>     **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-3453** |
| **DYNAMIC INDUSTRIES, INC.,**<br>     **Defendant** | **SECTION: "E" (3)** |

### ORDER AND REASONS

Before the Court are three motions in limine filed by Defendant Dynamic Industries, Inc.[1] Plaintiff POSH Saudi Co. Ltd. has filed an opposition to each motion.[2] Defendant seeks to exclude all evidence of apparent authority;[3] alternatively, all evidence of apparent authority relied on by persons not responsible for approving/accepting the Parent Company Guarantee;[4] and all evidence not produced in discovery.[5] For the following reasons, each of Dynamic Industries' motions in limine is **DENIED**.

### BACKGROUND[6]

On October 1, 2018, Plaintiff POSH Saudi Co. Ltd. ("POSH Saudi") entered into a charterparty with Dynamic Industries Saudi Arabia, Inc. ("Dynamic Saudi"), which is a subsidiary of Defendant Dynamic Industries, Inc. ("Dynamic Industries").[7] That same day, Donald Sinitiere signed a Parent Company Guarantee, in which Dynamic Industries guaranteed the performance of its subsidiary Dynamic Saudi's obligations under the

---

[1] R. Docs. 64, 65, 66.
[2] R. Docs. 68, 69, 70.
[3] R. Doc. 64.
[4] R. Doc. 66.
[5] R. Doc. 65.
[6] The Background facts are taken primarily from the allegations in the Complaint. R. Doc. 1.
[7] *Id.* at ¶¶ 6-7.

1

charterparty.[8] The Parent Company Guarantee provides for application of English law.[9] After the charterparty ended, Dynamic Saudi still owed POSH Saudi $3,998,167.80, which was confirmed in a September 20, 2020, final arbitration award from the London Maritime Arbitrators Association.[10] After demand, Dynamic Saudi has not paid POSH Saudi the amounts owed.[11] In this case, POSH Saudi sued the parent Dynamic Industries to recover the final arbitration award through enforcement of the Parent Company Guarantee.[12] Thus, the principle issues in this case concerns the validity of the Parent Company Guarantee, including whether Sinitiere had actual or apparent authority to enter into such a contract on behalf of Dynamic Industries.[13]

## LAW AND ANALYSIS

### I. The Court Will Not Exclude Evidence of Apparent Authority.

Dynamic Industries argues any evidence of apparent authority should be excluded as irrelevant because Louisiana law applies to the issue of authority for an agent to bind a principal, and under Louisiana law, express written authority is required to authorize an agent to enter into a guarantee.[14] Dynamic Industries argues Louisiana law applies to this issue under two theories: 1) Louisiana law applies under Louisiana's choice-of-law articles, despite the choice of English law in the Parent Company Guarantee, because English law regarding apparent authority to enter into a contract of suretyship violates Louisiana public policy; or 2) if English law applies to the Parent Company Guarantee,

---

[8] *Id.* at ¶ 8.
[9] R. Doc. 28-2 at ¶ 5. The parties have stipulated this document is the Parent Company Guarantee. R. Doc. 28 at ¶ 2.
[10] R. Doc. 1 at ¶¶ 9-12. The London Maritime Arbitrators Association later awarded costs to POSH Saudi as well. *Id.* at ¶ 18.
[11] *Id.* at ¶¶ 14-16
[12] *Id.* at ¶¶ 20-26.
[13] R. Doc. 61 at 14-17 (contested issues of law in proposed pretrial order).
[14] R. Doc. 64-1 a 9-14; La. Civ. Code arts. 2993, 2997, 3038.
.

English law for overseas companies directs that questions of lawful authority to act for the overseas company and execution of documents be governed by the law of the company's state of incorporation, Louisiana.[15]

### A. The Parent Company Guarantee Is Governed by English Law.

The Parent Company Guarantee provides, "This guarantee shall be governed by and construed in accordance with English law."[16] "Federal courts sitting in diversity must apply the choice-of-law rules of the state in which they are located."[17] Thus, the Court will apply Louisiana conflicts law to determine whether the choice-of-law provision is valid. Louisiana Civil Code article 3540 provides conventional obligations "are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537."[18] The Court must thus determine the state whose law would be applicable under Civil Code article 3537.

Civil Code article 3537 provides the general rule for choosing the law applicable to conventional obligations:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate

---

[15] *Id.* at 3-8.
[16] R. Doc. 28-2 at ¶ 5.
[17] *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 250 (5th Cir. 1994) (citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941)).
[18] La. Civ. Code art. 3540 (2022); *see also Cherokee Pump & Equip.*, 38 F.3d at 250.

3

commercial intercourse, and of protecting one party from undue imposition by the other.[19]

Dynamic Industries argues the state whose law "would otherwise be applicable" in the absence of a choice-of-law provision in the Parent Company Guarantee is Louisiana, and because applying the English law regarding apparent authority to enter into a contract of suretyship would violate the public policy of Louisiana, Louisiana law should apply.[20] Dynamic Industries reasons that, under Louisiana law, "a third party cannot rely upon a putative mandate [which is analogous to apparent authority] where the transaction at issue is one for which express authority is required,"[21] and because English law allows for an agent with apparent authority to bind the principal to a guarantee,[22] an application of this conflicting English law would violate Louisiana public policy.

The factors to consider under Civil Code article 3537 include the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; the nature, type, and purpose of the contract; the relationship of each state to the parties and the dispute; the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state;

---

[19] La. Civ. Code art. 3537.
[20] R. Doc. 64-1 at 6-7.
[21] *Amitceh U.S.A., Ltd. v. Nottingham Constr. Co.*, 2009-2048, pp. 6, 8 (La. App. 1 Cir. 10/29/10), 57 So. 3d 1043, 1050-51 (first citing *Walton Constr. Co., L.L.C. v. G.M. Horne & Co., Inc.*, 07–0145, p. 12 (La. App. 1 Cir. 2/20/08), 984 So.2d 827, 836.; and then citing *Hoffman, Siegel, Seydel, Bienvenu & Centola, APLC v. Lee*, 05–1491, p. 11 (La. App. 4 Cir. 7/12/06), 936 So.2d 853, 860).
[22] *See, e.g., Golden Ocean Grp. Ltd. v Salgaocar Mining Indus. PVT Ltd.* [2011] EWHC (Comm) 56 [127], [2011] 1 WLR 2575 [127] (Eng.) ("In addition it seems to me arguable that, if Howe Robinson were not given actual authority to bind the guarantor, they had at least apparent authority to do so . . . ."); *Rimpacific Navigation Inc v Daehan Shipbuilding Co.* [2009] EWHC (Comm) 2941 [35]-[43], [2010] All ER 814 (Comm) [35]-[43] (Eng.) (finding apparent authority to enter into a guarantee).

and the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.[23]

Under Louisiana's conflicts law,

> A choice of law provision in a contract is presumed valid until it is proved invalid. . . . The party who seeks to prove such a provision invalid because it violates public policy bears the burden of proof. . . . Courts are reluctant to declare such provisions void as against public policy. . . . Courts favor, and tend to uphold, choice of law provisions in contracts, particularly when such provisions are used in interstate transactions. . . .[24]

The Court is not convinced a thorough analysis of the factors in article 3537 would result in Louisiana law being otherwise applicable to the Parent Company Guarantee. In any event, Dynamic Industries does not include such an analysis in its motion. Instead, it repeats in various ways the fact relating to only one factor: that Dynamic Industries is a Louisiana company.[25] In particular, Dynamic Industries argues "the alleged contract at issue involves the purported guarantee of a Louisiana company to a Saudi Arabian company," "[t]he object of the guarantee . . . is performance and/or payment emanating from Dynamic Industries, Inc., *i.e.* from Louisiana," and "[t]he place of domicile, habitual residence and business of Dynamic Industries, Inc. is Louisiana, not England."[26] Dynamic Industries ignores the other factors: that the Parent Company Guarantee was principally negotiated and executed in Saudi Arabia; that the Parent Company Guarantee guaranteed the performance of a Saudi Arabian-based subsidiary for a Saudi Arabian company; and that the parties chose the same governing English law as the underlying charterparty,[27]

---

[23] La. Civ. Code arts. 3515, 3537.
[24] *Cherokee Pump & Equip.*, 38 F.3d at 252 (alterations in original) (quoting *Delhomme Indus., Inc. v. Houston Beechcraft*, 669 F.2d 1049, 1058 (5th Cir. 1982) (analyzing Louisiana's conflicts of law rules)).
[25] R. Doc. 64-1 at 7-8.
[26] *Id.* at 7.
[27] R. Doc. 70 at 11-13.

5

which courts have repeatedly noted to be fair in international transactions.[28] Dynamic Industries has not met its burden of establishing Louisiana law would be applicable under article 3537, and, as a result, has not established the choice of English law should be considered invalid under Civil Code article 3540.

Even assuming Louisiana is the state whose law would otherwise be applicable absent the English choice-of-law provision, the Court does not find the availability of apparent authority to enter into a guarantee under English law would violate Louisiana public policy. "The law of a state and its public policy are not necessarily synonymous. Not every law enacted by the legislature embodies the 'public policy' of the state."[29] In fact, the official comments to Article 3540 note "only strongly held beliefs of a particular state qualify for the characterization of 'public policy.'"[30] For example, in *O'Hara v. Globus Medical, Inc.*, the Louisiana First Circuit held application of Pennsylvania law, which allows for noncompete agreements between employers and employees, would violate Louisiana's strong public policy against enforcement of such provisions.[31] The applicable Louisiana statute expressly provides noncompete agreements "shall be null and void" and a "choice of law clause in an employee's contract . . . shall be null and void."[32] Moreover, this policy had a strong basis in "an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden."[33] In *Robinson v. Robinson*, the Louisiana Supreme Court refused to apply a North Carolina choice-of-law provision in a property settlement

---

[28] *See, e.g.*, *Haynsworth v. Corporation*, 121 F.3d 956, 967 (5th Cir. 1997) (citing cases).
[29] *Cherokee Pump & Equip.*, 38 F.3d at 252; *see also Delhomme Indus.*, 669 F.2d at 1058 ("One state's law does not violate another state's public policy merely because the law of the two states differ.").
[30] *Id.* (quoting La. Civ. Code art. 3540 cmt. f).
[31] *O'Hara v. Globus Med., Inc.*, 2014-1436, pp. 16-18 (La. App. 1 Cir. 8/12/15), 181 So. 3d 69, 80-81.
[32] *Id.* at p. 16, 181 So. 3d at 80 (quoting La. Rev. Stat. § 23:921(A) (2015)).
[33] *Id.* at p. 17, 181 So. 3d at 81.

agreement between a divorcing couple because North Carolina law would frustrate Louisiana's strong public policy in community property.[34] The court noted "community property laws are for the purpose of recognizing the non-financial contributions of the non-employed spouse to the family's well-being," and "[a] husband may not divest a wife of her interest in property by choosing a state law that may benefit his interests to the detriment of his spouse."[35]

Dynamic Industries has no support for its argument that Louisiana's requirement of express authority for an agent to enter into a suretyship on behalf of a principal constitutes a strongly held belief or public policy of the state. Dynamic Industries points only to the discrepancy between English and Louisiana law, which is insufficient. Not every Louisiana law embodies the public policy of the state.[36] Nothing in the applicable Civil Code articles or their official comments provides that the application of English law to this issue would violate Louisiana's public policy, as in *O'Hara*, nor does Louisiana law declare the contractual choice of English law to determine whether there is apparent authority for an agent to sign a suretyship agreement is void, as in *O'Hara*.[37] Dynamic Industries has not met its burden of proving the application of English law violates the public policy of Louisiana—or any other interested state whose law may have otherwise been applicable.[38] Accordingly, the choice-of-law provision is not invalid, and the Parent Company Guarantee is governed by English law, as specified in its choice-of-law provision.

---

[34] *Robinson v. Robinson*, 1999-3097, pp. 11-12 (La. 1/17/01), 778 So. 2d 1105, 1116-18.
[35] *Id.* at pp. 11-12, 778 So. 2d at 1117.
[36] *Cherokee Pump & Equip.*, 38 F.3d at 252.
[37] *See* La. Civ. Code arts. 2993, 2997, 3038.
[38] *See Cherokee Pump & Equip.*, 38 F.3d at 252 (holding the party challenging a choice-of-law provision had not met its burden when that party produced no authority expressing a strongly held belief in the relevant portion of Louisiana law and that law itself did not indicate a strongly held belief).

### B. English Law Provides for the Application of English, Not Louisiana, Law to the Issue of Apparent Authority.

Dynamic Industries next argues, even if English law is applicable, English law directs the application of Louisiana law to the issue of authority for an agent to bind a principal because Dynamic Industries is a Louisiana corporation. Dynamic Industries argues the Overseas Companies (Execution of Documents and Registration of Charges) Regulations 2009[39] (the "2009 Regulations") require the application of Louisiana law to the issue of apparent authority.[40] The 2009 Regulations provide, in relevant part:

**PART 2**
EXECUTION OF DOCUMENTS ETC

**Application of Part**
3. This Part applies to all overseas companies.

**Formalities of doing business under the law of England and Wales and Northern Ireland**
4. Sections 43, 44 and 46 of the Companies Act 2006 apply to overseas companies, modified so that they read as follows—

"**Company contracts**
43.—(1) Under the law of England and Wales or Northern Ireland a contract may be made—

> (a) by an overseas company, by writing under its common seal or in any manner permitted by the laws of the territory in which the company is incorporated for the execution of documents by such a company, and
>
> (b) on behalf of an overseas company, by any person who, in accordance with the laws of the territory in which the company is incorporated, is acting under the authority (express or implied) of that company.
>
> (2) Any formalities required by law in the case of a contract made by an individual also apply, unless a contrary intention appears, to a contract made by or on behalf of an overseas company.

---

[39] Overseas Companies (Execution of Documents and Registration of Charges) Regulations 2009, SI 2009 No. 1917 (UK).
[40] R. Doc. 64-1 at 3-6.

> **Execution of documents**
> 44.—(1) Under the law of England and Wales or Northern Ireland a document is executed by an overseas company—
>
> > (a) by the affixing of its common seal, or
> >
> > (b) if it is executed in any manner permitted by the laws of the territory in which the company is incorporated for the execution of documents by such a company.[41]

Dynamic Industries argues the reference in the 2009 Regulations to execution "by any person who, in accordance with the laws of the territory in which the company is incorporated, is acting under the authority (express or implied) of that company" directs the application of the law of the territory in which the relevant overseas company is incorporated, here Louisiana, to the issue of apparent authority. However, English courts have rejected that exact argument and held that the 2009 Regulations concern merely formalities of execution of an agreement.

In *Habas Sinai Ve Tibbi Gazlar Istihsal Endrustrisi AS v VSC Steel Co.*, an English court, faced with the similar argument that the "the effect of the Regulations is that the . . . agreement will not be treated as having been made with the authority of Habas, unless it is made by an agent that is authorised under Turkish law, being the law of the territory in which Habas is located," noted that under several prior cases "[t]here is clear authority that the Regulations do not affect the question of ostensible [*i.e.*, apparent] authority."[42] Rather, the court explained, consistent with the heading that the 2009 Regulations concern merely "Formalities," the 2009 Regulations "do not affect issues of authority . . .

---

[41] Overseas Companies (Execution of Documents and Registration of Charges) Regulations 2009 pt. 2, ¶¶ 3-4.
[42] *Habas Sinai Ve Tibbi Gazlar Istihsal Endrustrisi AS v VSC Steel Co.* [2013] EWHC (Comm) 4071 [124]-[125], [2014] 1 Lloyd's Rep 479 [124]-[125] (Eng.) (first citing *Azov v Baltic Shipping Co* [1999] 2 Lloyd's Rep 159, 170 (Eng.); then citing *Rimpacific* [2009] EWHC (Comm) 2941 [30]-[31]; and then citing *Golden Ocean* [2011] EWHC (Comm) 56 [160]-[161]).

[but] are concerned with the formalities of execution."[43] Similarly, in *Rimpacific Navigation Inc v Daehan Shipbuilding Co.*, the court held the 1994 version of the overseas companies regulations, which contained identical language to Section 43(1)(b) of the 2009 Regulations, "effected no change as regards the governing law for the purposes of ostensible authority."[44] In *Golden Ocean Group Ltd. v Salgaocar Mining Indus. PVT Ltd.*, the court again held the 1994 overseas company regulations "have no bearing on the question of ostensible authority."[45]

Instead, under English common law, the question of actual authority is determined by the law governing the relationship between the principal and the agent[46]—here Louisiana law—and the question of apparent authority is governed by the law governing the agreement to which the agent purported to bind the company—here English law.[47]

The Court's interpretation of English law is reinforced by the opinions of each of the parties' English law experts.[48] Both experts agree that, under English law, the question of actual authority is governed by Louisiana law, and the question of apparent authority is governed by English law. As to actual authority, POSH Saudi's expert, Chris Smith, stated:

---

[43] *Id.* at [127]-[130].
[44] *Rimpacific* [2009] EWHC (Comm) 2941 [30]-[31].
[45] *Golden Ocean* [2011] EWHC (Comm) 56 [160]-[161].
[46] *See, e.g.*, *Emeraldian Ltd. P'ship v Wellmix Shipping Ltd.* [2010] EWHC (Comm) 1411 [157], [2011] 1 Lloyd's Rep 301 [157] (Eng.) ("It was common ground that Chinese law governed the relationship between Mr. Tao [the agent] and his employer GIS [the principal]."); *Habas Sinai* [2013] EWHC (Comm) 4071 [137] ("[I]n so far as Turkish law is relevant to the issue of actual authority I find that there is no requirement that the authority to enter into the arbitration agreement be given in writing.").
[47] *See, e.g.*, *Habas Sinai* [2013] EWHC (Comm) 4071 [115] ("[T]here are a number of decisions in which ostensible authority has been treated as being governed by English law as the result of putative agreement to a clause in a contract without any consideration of actual authority to agree that clause and notwithstanding that it was being alleged that there was no actual authority to enter into the contract."); *Rimpacific* [2009] EWHC (Comm) 2941 [35] ("There was of course no material issue as to the principles of ostensible authority as a matter of English law.").
[48] *See* Fed. R. Civ. Pro. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.").

10

> [A]s a matter of English law . . . any issues relating to whether an agent has actual authority to bind its principal should be determined by the law governing the relationship (normally contractual) between the agent and principal.
>
> . . . .
>
> In the circumstances, as a matter of English law, the question of actual authority of Mr Sinitere to bind Dynamic Industries Inc would be determined by the law of the place of Dynamic Industries Inc's incorporation or, if different, the law governing any contract of employment/agency between Mr Sinitere and Dynamic Industries Inc."[49]

Dynamic Industries' expert, Ian Chetwood, concurred: "It is tolerably clear, as a matter of general principle, the existence and scope of an agent's actual authority is to be determined having regard to the law applicable to the relationship between principal and agent. In this case, that is the law of Louisiana, USA."[50]

> As to apparent authority, Mr. Smith, stated:
>
> Whether an individual has apparent or ostensible authority to bind a principal to a contract with a third party is a question to be determined by reference to the putative proper law of the agreement in question.
>
> . . . .
>
> Accordingly, as a matter of English law, the question of whether or not Mr Sinitere had ostensible authority to bind Dynamic Industries Inc to the Guarantee would be decided by reference to the proper law of the Guarantee itself, i.e. English law.[51]

Mr. Chetwood agreed: "[T]he existence and scope of an agent's apparent authority is governed by the law which would govern the contract if the agent's authority were established. In this case that is the law of the Guarantee, namely that of England and Wales."[52]

---

[49] R. Doc. 41-3 at ¶¶ 27, 30.
[50] R. Doc. 41-2 at ¶ 23.
[51] R. Doc. 41-3 at ¶¶ 31, 36.
[52] R. Doc. 41-2 at ¶ 23.

11

Accordingly, because English law governs the question of apparent authority and because English law allows for evidence to be introduced with respect to apparent authority of an agent to execute a guarantee, evidence of apparent authority is admissible, and Dynamic Industry's motion in limine to exclude all evidence of apparent authority[53] is denied.

## II. The Court Will Not Exclude Evidence of Apparent Authority Relied on by Any Person Not Responsible for Approving/Accepting the Parent Company Guarantee.

Dynamic Industries argues that because Lee Keng Lin, as the Deputy CEO of PACC Offshore Holdings Ltd., POSH Saudi's parent company, had the final say on approval of the Parent Company Guarantee, any evidence of apparent authority presented to others at POSH Saudi, but not Lee Keng Lin, is irrelevant since only Lee Keng Lin could give final approval.[54] POSH Saudi responds that this argument mischaracterizes its decision-making structure, and while Lee Keng Lin gave the final approval, he relied on opinions from other people at POSH Saudi who had more direct relationships with Dynamic Industries and Dynamic Saudi, and more involvement in the underlying transaction.[55]

It appears that several POSH Saudi employees interacted with Dynamic Industries and Dynamic Saudi with respect to this transaction. In particular, POSH Saudi points to Michael Lim,[56] Joseph Assaf,[57] Ian Chen,[58] Andy Duncan,[59] as well as others. This testimony is relevant, and its relevance is not outweighed by an undue risk of prejudice.[60]

---

[53] R. Doc. 64.
[54] R. Doc. 66-1 at 4-11.
[55] R. Doc. 68 at 4-12.
[56] *Id.* at 7
[57] *Id.* at 5.
[58] *Id.* at 4-5
[59] *Id.* at 6.
[60] Fed. R. Evid. 401, 403.

12

Defendants may cross-examine POSH Saudi witnesses as to whether representations made to them were reasonably relied on by them or others. Dynamic Industry's motion in limine to exclude all evidence of apparent authority relied on by persons not responsible for approving/accepting the Parent Company Guarantee [61] is denied.

### III. The Court Will Enforce the Federal Rules of Civil Procedure.

Dynamic Industries argues any evidence not properly produced in discovery should be excluded pursuant to Federal Rule of Civil Procedure 37(c).[62] Dynamic Industries points to no specific evidence that has not been produced. The Court will enforce the Federal Rules of Civil Procedure at trial. If Dynamic Industries has an objection to a specific exhibit, it should have filed an objection with a supporting memorandum by the deadline set by the Court in the Amended Scheduling Order.[63] Accordingly, Dynamic Industry's motion in limine to exclude all evidence not produced in discovery is denied.

### CONCLUSION

**IT IS ORDERED** that Defendant Dynamic Industry's motion in limine to exclude all evidence of apparent authority[64] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Dynamic Industry's motion in limine to exclude all evidence of apparent authority relied on by anyone other than Lee Keng Lin[65] is **DENIED**.

---

[61] R. Doc. 66.
[62] R. Doc. 65-1.
[63] R. Doc. 30 at 4.
[64] R. Doc. 64.
[65] R. Doc. 66.

**IT IS FURTHER ORDERED** that Defendant Dynamic Industry's motion in limine to exclude all evidence not produced in discovery is **DENIED**.[66]

**New Orleans, Louisiana, this 29th day of March, 2022.**

*[Signature]*
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**

---

[66] R. Doc. 65.